THE STATE *v.* ROBERTSON ET AL.

[No. 3,183.   Filed November 29, 1899.]

COUNTY COMMISSIONERS.—*Allowance of Illegal Claim.—Indictment. —Criminal Law.*—An indictment alleging that the members of a board of county commissioners allowed a claim against the county which they knew to be illegal does not charge a crime under the provision of §2018 Horner 1897 that "any officer under the Constitution or laws of this State * * * who fails to perform any duty in the manner and within the time prescribed by law, shall, upon conviction thereof be fined," etc.

From the Lawrence Circuit Court.   *Affirmed.*

*W. L. Taylor,* Attorney-General, *Merrill Moores, C. C. Hadley* and *J. A. Zaring,* for State.

*C. C. Matson, J. Giles, J. C. Lawler, M. B. Hottel* and *W. H. Edwards*, for appellees.

WILEY, C. J.—Appellees. Robertson and Trueblood were members of the board of commissioners of Lawrence county. One John W. Cosner was also a member of said board. On the 15th of November, 1897, said Cosner filed in the auditor's office to be presented to the board of commissioners a claim for $100 for alleged and pretended services claimed to have been rendered by him as such commissioner in looking after the building and repairs of gravel roads when not sitting as a member of such board, and not for any services rendered by him while attending any session of said board. At its next session, the board of commissioners, the appellees acting as such, allowed said claim and ordered it paid. For this action they were indicted. The indictment, after reciting the above facts, is in the following language: "That said county and said board were in nowise indebted to said Cosner for any salary or per diem, nor on any account whatever, and nothing was due on said claim, but the same was wholly without warrant of law, and in excess of the fees, compensation, and rewards allowed in said county by law to county commissioners for the performance of official duties. That said Cosner caused said claim to be presented to said board on said 27th day of November for consideration and action. That it was then and there the duty of said board to reject said claim by voting to disallow the same, but said Robertson and Trueblood did then and there unlawfully and extorsively fail and refuse to perform said duty within the time in the manner prescribed by law by then and there unlawfully and extorsively failing and refusing to vote to reject said claim, and then and there unlawfully voted to allow said claim well knowing its illegal character, and said claim was then and there allowed and paid." Like the case of the *State* v. *Trueblood, ante,* 31, recently decided by this court, it is claimed by the prosecuting attorney and the

Attorney-General that this prosecution is based upon §2018 Horner 1897, which they are pleased to call the "extortion act." That part of the statute relied upon as embracing the crime charged against appellees is as follows: "Any officer under the Constitution or laws of this State, who * * * fails to perform any duty in the manner and within the time prescribed by law, shall, upon conviction thereof, be fined," etc.

On motion of the appellees, the trial court quashed the indictment; the State excepted, and on appeal has assigned the sustaining of the motion to quash as error. The indictment proceeds upon the theory that Cosner, who was a member of the board of commissioners, had filed with the auditor of the county a pretended claim against the county, for which there was no warrant or authority in law, for which the county was in nowise liable, and that it was the duty of appellees, sitting as the board of commissioners, to vote to reject the claim, and that in voting to allow it, they violated that provision of the statute which says that "any officer * * * who fails to perform any duty in the manner and within the time prescribed by law shall be amenable to the penalty prescribed therein."

Whether the act charged constitutes a crime, as defined by §2018, *supra*, depends upon the meaning of the statute and the construction that must be placed upon it. Most of the duties of public officers under the Constitution and laws of this State are prescribed by the Constitution and the laws. When such Constitution or laws prescribe any duty to be performed and fix a time in which it shall be performed, a failure or refusal to perform such duty may not only be enforced by mandate, but the failure would constitute such nonfeasance in office as would be punishable under §2018, *supra*. Thus, a township trustee is required by statute to meet at a fixed time with all other township trustees of the county for the purpose of electing a county superintendent of schools. If he refuses to meet, he may be com-

pelled to do so by mandamus, and for a failure to do so he may be prosecuted under §2018, *supra,* for a failure to perform a "duty in the manner and within the time prescribed by law." *Wampler* v. *State,* 148 Ind. 557, 38 L. R. A. 829, is in point. There appellant was a township trustee, and absented himself from the meeting of trustees, fixed by the statute to be held the first Monday in June, and by his absence prevented a quorum and the election of a county superintendent. A mandamus proceeding was brought against him to require him to meet with the other trustees to elect a superintendent. In deciding the case the court, by Jordan, J., said: "When public officers, charged with the execution of the law, refuse to obey its mandates, or wilfully ignore them, the evil results which must necessarily follow from such acts, tend to undermine the very foundation of civil government. When such officers fail or refuse to discharge their plain duties under the law, not only do they violate their official oaths, but also subject themselves to the penalty imposed by §2018 R. S. 1881, §2105 Burns 1894." Again, a township trustee is prohibited from creating a debt against his township beyond a fixed limit without first obtaining the consent of the board of commissioners of his county. The statute, however, fixing such limit, does not provide any penalty for its violation. In *Duty* v. *State,* 9 Ind. App. 595, appellant was indicted under §2105, *supra,* for failing to perform a public duty, in that he created a debt against his township beyond the limit fixed by law, and without first obtaining the consent of the board of commissioners. This court held, in a well considered opinion by Rhinehard, C. J., that a prosecution under the statute quoted would lie, and a judgment of conviction was affirmed. Both of the cases referred to rested upon an express and explicit failure to perform a public duty "in the manner and within the time prescribed by law." The learned Attorney-General has called our attention to the cases of the *Board, etc.,* v. *Heaston,* 144 Ind. 583, 51 Am. St. 192, and *Wint-*

rode v. *Renbarger*, 150 Ind. 556, in support of the suffi-
ciency of the indictment. The first of these cases cited was
an action to recover a large sum of money alleged to have
been illegally paid to the auditor of Huntington county by
the board of county commissioners for services pretended to
have been rendered. As a defense, the auditor pleaded the
allowance of the claim by the board of commissioners, and
contended that it was an adjudication of the question. It
was held that the allowance of the claims having been
unlawful, such allowance did not bind the county. The
court by Jordan, J., said: "If, under the facts in the case
at bar, we should place the construction on the law as con-
tended for by appellee, then a way would be paved by which
it would be rendered easy for any person, under the guise
of a legal claimant against a county, through the aid of its
commissioners, if the latter were inclined to close their eyes
to legal prohibitions, to unlawfully obtain and appropriate
to his own use the public money, and when called upon
in a court of justice to account for the same, deny the right
of the county's recovery upon the ground of *res adjudicata.*
Such in reason is not the law." We are unable to see what
support this case gives to strengthen or uphold the indict-
ment before us. We have no doubt under the holding in
that case, and upon sound legal and equitable principles, but
what the money alleged to have been paid Cosner, if it was
unlawfully paid, could be recovered from him in a court of
justice. If its allowance was unlawful the commissioners
did not act within the scope of their authority, and hence
such action was not *res adjudicata.* There is no intimation
in the opinion that for making the allowances to the auditor
the commissioners were liable to prosecution under §2105,
*supra*, for a failure to perform a duty in the manner and
within the time prescribed by law, in that they neglected to
vote to reject and disallow the claims. In the second case
referred to, *Wintrode* v. *Renbarger, supra*, appellant sued
appellee for slander. There were two paragraphs of com-

plaint, and each charges the speaking of alleged slanderous words. The words charged in the first paragraph were: "You are starving men to death in jail," and by innuendo it was alleged that appellee meant to charge appellant with a felony in attempting to murder prisoners by starvation. In the second paragraph, the alleged slanderous words were: "Yes, you are keeping the jail a d—d sight worse than 'Libby Prison,'" with the following innuendo: "Meaning and intending to charge that plaintiff, as keeper of the county jail, was torturing and starving and maltreating the prisoners under his charge and violating his official duties to provide for them food, as the law requires him to do; and he further avers that the false and defamatory phrase referring to Libby Prison, was meant the prison that was known during the War of the Rebellion as Libby Prison, and which was reputed to be, as a historical fact, and understood by the people generally, that such prison was being so conducted during the years of the war that prisoners of war imprisoned therein were not fed sufficient food, and that the quality thereof was bad, insomuch that the prisoners died of scurvy, and that they were starved and shot on the merest pretense by the persons in control thereof." It is made the duty of the sheriff to keep the county jail, and among other duties prescribed for him to perform are the following: "He shall provide proper meat, drink and fuel for prisoners." §6118 Horner 1897. By another section, he is required to "take care of the jail and prisoners therein." §5868 Horner 1897. By these statutes, it is made the express duty of a sheriff to furnish prisoners under his charge and in the county jail all necessary and suitable food, drink, and fuel. It is the policy of the law, and the dictates of enlightened and progressive civilization, that even the unfortunate and those who have offended the majesty of the law should receive humane treatment and be provided with the necessities of life. It being the statutory duty of a sheriff to furnish prisoners under his charge with necessary food, drink, and

fuel, his failure to do so would constitute a crime under §2018, *supra*, and 'it was upon this ground that it was held in *Wintrode* v. *Renbarger*, *supra*, that the words alleged to have been used by appellee in connection with the innuendo charged appellant with a crime, and hence were slanderous. True the statute does not provide any time, or prescribe the manner in which a sheriff shall provide the necessary food, drink, and fuel for his prisoners, for such a provision would be useless. The plain meaning of the statute is that such duty shall be performed as the necessities and conditions require.

With this extended reference to the case last cited, and the comments thereon, we are constrained to say, with all due deference to the Attorney-General, that the case does not lend any aid in support of the sufficiency of the indictment before us. It is rather against his contention, for we have shown that the decision rested upon the fact that the words used, with the innuendo, charged appellant with neglecting the performance of an official duty "in the manner and within the time prescribed by law," and "the words charged at least imputed such a crime." Every construction by the courts put upon that part of the statute under consideration has been based upon an express and explicit violation of some certain and definite statutory duty. We fully agree with the Attorney-General that the authorities clearly indicate that where public officials neglect to perform an official duty they are subject to punishment under §2018, *supra*. We will even go farther and say that where a public officer fails or neglects to perform any duty in the manner and within the time prescribed by law, he violates the statute, and may be punished accordingly. But we can not believe that in enacting the statute it was the intention of the legislature that it should be so broad and comprehensive as to include within its meaning the act charged against the appellees. County commissioners have a wide latitude under the law in the allowance of claims against their respective

State *v.* Robertson.

counties. A brief reference to some of the sections of the statute will verify this. §7830 Burns 1894, prescribes the powers and duties of county commissioners. By subdivision second they are empowered to allow all accounts chargeable against the county not otherwise provided for, etc. §7846 Burns 1894, provides that: "The county commissioners shall examine into the merits of all claims so presented; and may, in their discretion, allow any claim, in whole or in part, as they may find it to be just and owing." By §7850 Burns 1894, it is provided that, "The boards of commissioners may make allowances at their discretion." None of these statutes makes any reference to the manner, or within what time, county. commissioners shall act upon claims filed against the county. The, State contends that it was the duty of appellees, sitting as a board of county commissioners, when the claim of Cosner was presented to them for consideration, under the facts charged in the indictment, to vote to reject and disallow it, and that their failure so to vote was a failure to perform a duty in the "manner and within the time prescribed by law." To put such a construction upon the language of the statute would, it seems to us, be reading something into it, which the legislature never intended. When the statute under consideration was enacted, there were many statutes prescribing the duties of public officers under the Constitution and laws, and which also prescribed the manner and fixed the time in which their duties should be performed, and it was the evident intention of the legislature in passing the statute that it should embrace and reach those officers whose duties were so prescribed, and the manner and time of their discharge fixed. Counsel for the State say that if appellees are not punishable under this statute on account of the act charged against them, then there is no statute by which they can be punished. In this they may be correct, but as to that question we decide nothing. The only question now before us is whether appellees are punishable under §2105, *supra*, upon the facts charged.

If there is no other statute covering the crime charged and prescribing a punishment, the fault is not with the court. Courts do not make laws, but seek to construe and enforce them as they come from the law-making branch of the government.

We have given to the question involved much thought and careful consideration, but we can not adopt the view contended for by counsel for the State. That grave wrongs are perpetrated against the rights of the public by public officers under the guise of the law, and where adequate punishment is not prescribed, there seems to be no question; but to remedy the evil, we must look first to the legislature and then trust to the courts to enforce the laws it makes.

The trial court did not err in sustaining the motion to quash. Judgment affirmed.