Wampler v. State, ex rel. Alexander et al.

WAMPLER *v.* STATE, EX REL. ALEXANDER ET AL.

[No. 18,350. Filed October 26, 1897.]

MANDAMUS.—*Practice.*—*Demurrer.*—In a mandamus proceeding, if the facts in the alternative writ alone, or when supplemented by those in the application, are sufficient to entitle the applicant to the peremptory writ, a demurrer addressed to the alternative writ alone, or to both the writ and application, should be overruled. *pp. 560–562.*

SAME.—*Proper Remedy to Coerce a Public Officer to Discharge His Duty.*—Mandamus is the proper remedy to coerce an officer to discharge a public duty, and if it is a matter in which the people in general are interested it is not required that the applicant show any legal or special interest in the result sought to be obtained. It is only necessary that he be a citizen, interested in common with other citizens in the execution of the law. *pp. 563, 571, 572.*

COUNTY SUPERINTENDENT.—*Courts Judicially Know the Time for Electing.*—Courts judicially know the proper biennial year in which the township trustees of each county in the State are required to meet and elect successors to county superintendents then in office. *p. 565.*

SAME.—*Time for Election of by Township Trustee.*—*Statute Construed.*—The provision of section 5900, Burns' R. S. 1894 (4424, R. S. 1881), that township trustees shall meet biennially on the first Monday in June and appoint a county superintendent, is directory merely, and a failure to get a quorum on that day does not prevent a meeting for that purpose on a subsequent day. *p. 569.*

SAME.—*Mandamus May be Invoked to Compel Attendance of Absent Trustee at Meeting to Elect Superintendent.*—Where a township trustee fails to meet with the other trustees for the purpose of electing a county superintendent on the day provided by statute,

and such other trustees for lack of a quorum have adjourned from day to day, mandamus may be invoked to compel such absent trustee to perform his official duty by attending the meeting. *State* v. *Harrison,* 67 Ind. 71, in so far as it conflicts with this opinion, is overruled. *p. 571.*

From the Blackford Circuit Court. *Affirmed.*

*Jay A. Hindman,* for appellant.

*John A. Bonham,* for appellee.

JORDAN, J.—This was a proceeding in the lower court on the part of the relators, Virgil H. Alexander and Alexander Gable, to obtain a writ of mandate against the appellant, a township trustee of Blackford county, Indiana, to compel him to meet with them (who are also township trustees), for the purpose of electing a county superintendent of schools. On the filing of the application the court awarded an alternative writ. After being served with this writ, the appellant appeared in court and demurred for insufficiency of facts. First, to the application; second, to the alternative writ; third, to the application and alternative writ taken as one pleading. Each of these demurrers was overruled, and the proper exceptions were reserved. Appellant refusing to plead further, the court granted a peremptory writ of mandate, as prayed for by the relators, commanding the appellant to meet at the auditor's office at 9 o'clock a. m. on June 23, 1897, for the purpose of appointing a county superintendent. The several rulings of the court upon the demurrers are assigned as errors.

The following facts, among others, are substantially alleged in the application, and, in part, recited in the alternative writ: At and for more than one year prior to the filing of the application, on June 8, 1897, the relators were resident citizens and taxpayers of Blackford county, Indiana, and were each township trustees of said county; that there are four townships in

that county, and no more, and appellant, at the be-
ginning of this action, and for more than one year
prior to said time, was the duly elected, qualified, and
acting trustee of Harrison township, of said county;
that these relators and appellant, as such trustees,
were, in pursuance of law, required to meet at the
office of the county auditor on the first Monday of
June, 1897, for the purpose of appointing a county
superintendent; that in pursuance of the statute and
a previous written notice given by the county auditor
to each and all of said trustees to meet at the time and
place aforesaid stated, the relators, as such trustees,
did, on the first Monday in June, 1897, the same being
June 7, 1897, at nine o'clock a. m., meet at the office
of the said auditor for the purpose of appointing a
superintendent, but appellant, as such trustee, failed
and refused to meet at said hour on said day, or at
any other time during said day; that by reason of the
fact that there were four township trustees, it was
necessary for three, at least, of that number to meet,
in order to organize and proceed with the business of
electing a superintendent.  During all of said day
none of the trustees, except these relators, met at said
auditor's office, whereby they were prevented from
perfecting an organization, and appointing a county
superintendent; that relators, from the time they met,
as aforesaid, with the auditor, at his office, remained
there ready to organize and appoint a superintendent,
until the hour of twelve o'clock, midnight, on said day,
and no other trustees having appeared at said meet-
ing, or being present thereat, and they being unable to
transact any business by reason of the absence of the
other two trustees, adjourned to meet at the same
place on the day following, June 8, 1897, at nine
o'clock a. m.  The relators again met at the time and
place in accordance with their adjournment, but that

neither the appellant nor the other trustee appeared at said meeting on said following day. It is further shown that these relators continued their meeting at the auditor's office on the day last mentioned, up to the time of filing their application herein, and it is alleged that they intend to meet for the purpose of electing a county superintendent, and adjourn from day to day until a quorum is secured, etc. They aver that the business of appointing a superintendent cannot be effected without the appellant being present with them at said meeting, and that no other adequate remedy exists.

The first contention of counsel for appellant is, that the facts as alone recited in the alternative writ are not sufficient to withstand a demurrer. Prior to the decision of *Board, etc., v. State*, 61 Ind. 75, a practice of treating the application as the complaint, in actions for mandate, even where the alternative writ had been issued, seems to have been recognized by this court. In the case above cited, a departure was made from this practice, and it was there held, in view of the provisions of the code of 1852, relative to mandamus suits, and upon the authority of Moses on Mandamus, that the alternative writ must be taken as in the nature of a complaint in the cause, and the facts stated therein must be sufficient to entitle the party to the writ.

In *Gill* v. *State*, 72 Ind. 266, the former decisions of this court, including *Board, etc., v. State, supra*, upon this question, were reviewed, and the rule was there stated as follows: "The alternative writ, when issued, will be taken as in the nature of a complaint in the cause," and "must show what is claimed, and in itself, or in connection with the complaint, petition or affidavit on which it is issued, show the ground on which the claim is made; and the facts stated must be suf-

ficient in law to entitle the party to the writ." The court further saying: "This we think is in harmony with the spirit of the code, and with the practice which has long obtained in this class of cases, and, while it does not overrule, will prevent any undue extension or misapplication of the rule enunciated in the later cases referred to." This holding was followed in *Potts* v. *State,* 75 Ind. 336.

Since the decision in *Gill* v. *State, supra,* it has been the practice, in at least some of the trial courts in this State, to call in question, by the same demurrer, the sufficiency of the facts stated in the writ and application, taken together, and this procedure seems to have been recognized by the appellant in the lower court by addressing, as it did, in one particular, a demurrer to both the writ and application.

In the case of *Board, etc.,* v. *Cutler,* 7 Ind. 6, this court held that it had been the practice to look into the whole record and determine whether mandamus is the appropriate remedy, as well as the question whether the allegations are sufficient to authorize the writ. While it may be, and ought to be considered the proper practice, under the more recent decisions of this court, which assert a rule of practice consistent with that generally prescribed by authorities on mandamus proceedings, to treat the alternative writ, unless the issuing thereof has been waived by the defendant, as a complaint, upon which issues of law and fact may be joined, and, generally speaking, the facts therein recited ought to be sufficient to justify the court in awarding the peremptory writ; nevertheless, those alleged in the verified application, upon which the alternative writ rests, may be, when necessary, used, or looked to, in order to supplement those embraced in the writ, and the application may be con-

sidered by the court in connection with the alternative writ to which the demurrer may have been addressed. Therefore, if the facts in the writ alone, or when supplemented by those in the application, are sufficient to entitle the applicant to the peremptory writ, a demurrer addressed to the alternative writ alone, or to both the writ and application, should be overruled. This rule is in harmony with the holding in the cases of *Board, etc.,* v. *Cutler, supra; Gill* v. *State, supra,* and *Potts* v. *State, supra,* and does not militate against other decisions of this court, wherein, in effect, it is held that the writ, when considered alone, without reference to the application, must be sufficient.     This point being settled, we are not, therefore, in this case, as insisted by appellant, compelled to confine our inquiry only to the facts in the writ, but may consider them together with those alleged in the application.

The principal question submitted for our decision is: Are the facts disclosed by the alternative writ and application, when considered together, sufficient to warrant the lower court in its action in overruling the demurrer to the writ, and ordering the peremptory writ of mandate to issue, requiring the appellant to meet with the relators at the auditor's office of Blackford county, on the day mentioned, for the purpose of appointing a county superintendent?

The theory of the insistence of appellant's counsel is: 1st. That relators herein are not shown to have the requisite interest to entitle them to prosecute this action.  2d. That, under the facts, mandamus will not lie to compel the appellant to meet for the purpose of electing a superintendent on a day subsequent to the first Monday in June.  Or, in other words, that he did not have the power, under the statute in controversy, of meeting, after the time provided therein, for the reason, as contended, that the law is mandatory in

this respect, and restrains him from doing so; hence, on this ground, the principal contention is, that he cannot be mandated by the court to exercise a power which he did not possess after the first Monday in June, 1897, and, consequently, there can be no meeting and election by the trustees until the next biennial year. It is also insisted that it does not appear from the facts that any vacancy had occurred in the office of superintendent in Blackford county which was required to be filled on the first Monday in June, 1897.

Section 5900, Burns' R. S. 1894 (4424, R. S. 1881), provides: "The township trustees of the several townships of each county shall meet at the office of the county auditor of such county, on the first Monday in June, 1873, and biennially thereafter, and appoint a county superintendent, * * * whose official term shall expire as soon as his successor is appointed and qualified. * * * Whenever a vacancy shall occur in the office of county superintendent, by death, resignation, or removal, the said trustees, on notice of the county auditor, shall assemble at the office of the county auditor, and fill such vacancy for the unexpired portion of the term, * * * * and the county auditor shall be clerk of such election, in all cases, and give the casting vote in case of a tie," etc.

Section 1182, Burns' R. S. 1894 (1168, R. S. 1881), being section 804 of the civil code, provides: "Writs of mandate may be issued to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, or a duty resulting from an office, trust, or station." Under this provision of our code, the rule is well affirmed that mandamus is the proper remedy to coerce an officer to discharge a public duty, and any person having an interest in the matter involved may apply for the

writ. *Hamilton* v. *State,* 3 Ind. 452; *Henderson* v. *State,* 53 Ind. 60; *Holliday* v. *Henderson,* 67 Ind. 103.

Mandamus is regarded as an extraordinary remedy of an equitable nature, which will lie only where the law affords no other adequate remedy, and hence, without the aid of the writ, there would be a failure of justice.

The statute in express terms lodges the election of a county superintendent in the township trustees of each county, and imposes upon each of them the duty of meeting on the first Monday in June, beginning in 1873, and on the same day biennially thereafter, at the place designated, and of appointing a county superintendent. This being a duty enjoined upon these officials by law, therefore, in the event they refuse or neglect to discharge it, it then becomes one of the peculiar functions of a mandate to compel them to obey the law by discharging this duty, as there are no other adequate means to meet and remedy the evils and injustice which would result by reason of the failure or refusal of these public servants to respect and obey the law. Certainly, it cannot be successfully controverted but what mandamus may be invoked to enforce township trustees, or any one thereof to meet with each other at the time and place prescribed by law and proceed with the business of appointing a county superintendent. This being true, then if it can be said that they are not restrained or prohibited by the statute in question from meeting and performing this duty after the day prescribed, but still have the power to subsequently do so, there is no question but what, in the event of their failure or refusal to meet for the purpose mentioned, after the lapse of the time fixed by law, they may also be compelled to do so by a writ of mandate, on the application of any person shown to be invested with the right in the particular instance to demand it. *People* v. *Schiellein,* 95 N. Y. 124.

Having reached this conclusion, we may proceed to determine whether, in view of the facts in this cause, and the law applicable thereto, the appellant still had the legal power to meet for the purpose provided by the statute, after the expiration of the time therein fixed, and was it his duty to exercise this power? We may, however, first say, in answer to appellant's insistence, namely: That there are no facts alleged showing that any vacancy had occurred in the office of superintendent of Blackford county which required a meeting of the trustees on the first Monday in June, 1897, in order to fill the same, that we recognize no merit in this contention. Under the provisions of the statute the official term of a county superintendent extends from one biennial election to the next, and terminates as soon as his successor is elected and qualified; and any one appointed to fill a vacancy holds only for the unexpired part of the term, and until his successor is elected and qualified at the next ensuing biennial election. We accordingly, judicially know, that 1897 is the proper biennial year in which the trustees of each county in the State were required to meet on the first Monday in June and elect successors to the superintendents then in office.

In arriving at a correct interpretation of the only point now involved, we may consider it, first, in the light of our own decisions which have a bearing thereon, and next, in that of other authorities.

In the case of *State* v. *Harrison*, 67 Ind. 71, it appeared that the trustees, being twelve in number, met on the first Monday in June, 1879, but were unable to choose a superintendent. On the morning of the next day they adjourned *sine die*. In pursuance of a notice from the auditor, eleven of them convened again in his office on June 16, 1879, and organized, and were proceeding to appoint a superintendent, when three of

the number withdrew from the meeting, and the remaining eight selected a superintendent. The election was held invalid. The question as there involved, seems to have received but a cursory consideration, and the only reason given to support the decision is the bare mention of the fact that the appointment not having been made on the first Monday in June, and no vacancy existing by reason of removal, resignation or death, the appointment of the appellant therein was not authorized.

In *Sackett* v. *State*, 74 Ind. 486, the statute there in-volved required the common council of each city to annually elect at its first regular meeting in June one school trustee. The common council of the city of New Albany having failed to elect such trustee at its first regular meeting in June, in 1880, performed this duty at a regular session held on July 19 of the year, this action of the council was sustained. This court held, in that case, that while the election should have occurred at the first regular meeting in June, still the statute could not be construed as limiting the power of the council to the time prescribed, but that it could be legally exercised by electing a trustee on a subsequent day. In the course of the opinion, on page 489, it was said by the court, per Woods, J.: "The counsel for the appellee on the contrary insist that, under the law, the duty to elect is imperative, and that, in so far as it prescribes the time when the election shall be had, the statute is directory only.

"We concur in this position. The opposite view leads directly and necessarily to results which it is impossible to believe could have been intended by the legislature, and which an examination of the provisions of the law will plainly show were not intended. A failure to elect at the appointed time, as may well have been conceived, is liable to happen from many

causes. A quorum of the common council may be wanting on account of accident, or of sickness, or of absence of its members; and, when a quorum is not wanting, a tie vote may defeat a choice. But if it be held that a failure to elect suspends the power to elect until the recurrence of the prescribed day, it is easy to see that corrupt motives and influences may intervene for the purpose of preventing an election at the appointed time. If reasonably possible to be escaped, an interpretation of the law which promotes or tends to such results should not be adopted."

The case of *State* v. *Harrison, supra,* was distinguished in this last appeal, and, in referring to it, Judge Woods said: "It may well be doubted, however, whether, if an election had been accomplished upon the second day, or upon the day of an adjourned meeting, held within a reasonable time, it would have been declared invalid; and possibly, after the adjournment without day, a mandamus might lawfully have issued to compel a reassemblage, in order to perform the work which they ought to have done before adjourning."

In *State* v. *Vanosdal,* 131 Ind. 388, 15 L. R. A. 832, the trustees met on the first Monday in June of the required year, and remained in continuous session until after midnight on that day, after which hour they elected a superintendent. This election was held valid.

In *People* v. *Allen,* 6 Wend. 486, the militia law of the state of New York made it the duty of certain commanding officers to appoint brigade court martials on or before the first day of June in each year. The commanding officer omitted to appoint the court martial in that case until July next following the time fixed by the law. The appointment was held valid. In reviewing the question of the power of the officer to ap-

point the court martial, the court said: "Where a statute specifies the time within which a public officer is to perform an official act regarding the rights and duties of others, it will be considered *directory* merely, unless the nature of the act to be performed, or the language used by the legislature, show that the designation of the time was intended as a limitation of the power of the officer."

This statement of the law, at least, in five appeals, has been expressly approved by this court. See *Nave* v. *King*, 27 Ind. 356; *Day* v. *Herod*, 33 Ind. 197; *Jones* v. *Carnahan*, 63 Ind. 229; *Sackett* v. *State*, *supra; Jones* v. *Swift*, 94 Ind. 516.

In Dillon on Munic. Corp., section 839 (3d ed.), the author says: "In this country it has been decided that an election for municipal officers may be held after the charter day, and that mandamus may be granted to compel the proper officers to give notice thereof."

In *State* v. *Smith*, 22 Minn. 218, the common council of the city of Duluth was invested by law with the appointment of a city assessor. The time fixed for his election by the city charter was at the first meeting of the council after the annual city election, or at an adjournment thereof. In 1874 the annual election was held on the first Tuesday in April. After this election the common council met on the 14th of that month, and adjourned *sine die* without having elected an assessor. On the 29th of April, in the same year, the council convened pursuant to an irregular adjournment, by a less number than a quorum, from a previous regular meeting, and elected an assessor. It was held that the latter was legally elected and entitled to the office. The court, in considering the point raised in the case, said: "In our judgment, the meeting held on April 14, 1874, with the presumed assent and participation of all of its members, was a valid meeting.

Assuming that this was the proper time for the elec-. tion of an assessor, the failure of the council then to act upon the matter, and its adjournment *sine die*, did not relieve it from the duty, which the law imposed upon it, of making an election. So far as relates to the time when such election should be made, the statute is simply directory. Having neglected its duty at the proper time, from whatever cause, the obligation still rested upon it to elect at the earliest opportunity."

While it is true that the statute in controversy does not in express terms provide for a meeting of the trus tees on a day subsequent to the one named, neither does it expressly limit the power or right to meet on the day prescribed, and not thereafter. The duty of the trustees, under the statute, to elect a superintendent biennially, is imperative, and each of them is obligated to convene with the others on the first Monday in June of the proper year for that purpose. But there are no negative words in the statute, nor any feature or provisions therein to indicate that the legislature, under all circumstances, intended to limit their power to meet for the discharge of the duty assigned, to the day appointed, and thereby restrain or prohibit them from effectually executing it after the expiration of the time named. Upon this view of the case, under the rule so firmly settled by the author ities heretofore referred to, and others hereafter cited, the provisions of this statute, naming or fixing the time for the trustees to convene, must be considerd as directory only, and not as prohibiting the exercise of the power or discharge of the duty imposed after the termination of the time named or appointed therein. Guided by this principle, and it is manifest, we think, that the legislature in naming the first Monday in June intended it as a direction to the township trus-

tees to meet on that day and proceed to transact the required business of appointing a county superintendent. There is nothing in the character of the particular power with which the trustees are invested to warrant the inference or belief, on their failure to meet at the time mentioned, that they could not lawfully and effectually execute it on some subsequent day, as reasonably near as possible to that fixed by the statute. The following additional authorities support this construction of the statute in controversy. Smith, Const. Constr., sections 670 and 674; Sedgwick, St. Const. Law, p. 316; Potter, Dwarris Statutes, pp. 221 and 228; *People* v. *Trustees of Town of Fairbury*, 51 Ill. 149; *State* v. *Harris*, 17 Ohio St. 608; *Webster* v. *French*, 12 Ill. 302; *Pond* v. *Negus*, 3 Mass. 230, 3 Am. Dec. 131; *Williams* v. *School District*, 21 Pick. 75, 32 Am. Dec. 243; *Savage* v. *Walshe*, 26 Ala. 619; *City of Lowell* v. *Hadley*, 8 Metc. (Mass.) 180; *Ex parte Heath*, 3 Hill 42; *Gale* v. *Mead*, 2 Denio 160; *People* v. *Holley*, 12 Wend. 481; *Jackson* v. *Young*, 5 Cow. 269, 15 Am. Dec. 473; *Colt* v. *Eves*, 12 Conn. 242.

To place the interpretation upon the statute urged by the appellant would enable designing trustees to defeat its very object. By the failure or refusal of a sufficient number to meet on the day named, they might prevent a quorum from being obtained, and, consequently, no legal election could be effected on that day. If, then, as contended by appellant, there can be no valid meeting had or appointment made, by either compulsory proceedings or otherwise, until the same day at the next biennial period, the people would be at the mercy of such unfaithful officials, and the possible result might be to keep an incumbent in office perpetually. Under such an interpretation of this statute, a like result might follow, if a sufficient number of trustees should be pre-

vented from assembling on the prescribed day, so as to defeat a quorum, by reason of sickness, or any other legitimate cause.    Such results were not intended by the legislature in the passage of the law in question.    There were four trustees in Blackford county, any three of whom, had they been present, would have secured a quorum for the lawful transaction of the business before them.    *State* v. *Vanosdal, supra,* and the cases there cited.    Relators being less than a quorum, could do nothing more than adjourn, as they did.    Roberts' Rules of Order, section 43; Cushing's Manual, section 19; 1 Beach on Private Corporations, Section 276; 1 Thompson on Corporations, section 721.

Appellant's presence, under the circumstances, was essentially necessary, and, having the legal ability to be present, he refused to yield his obedience to the law and meet with relators, and thereby assist to carry out its object and purpose; and now, when confronted with the strong arm of the court compelling the performance of a willfully omitted duty, he seeks to shield himself from its performance under the claim, and upon the ground asserted that he no longer possesses the power to do so.    This claim, as we have seen, the law does not support.    The authorities constrain us to hold that, under the facts, the obligation to perform this important public duty continued to rest on appellant after the expiration of the legally appointed day, and the law did not deprive him of the power to perform it thereafter, and mandamus is the proper action to remedy the wrong perpetrated by him.    In addition to other authorities on this point, see Smith's Addison on Torts, p. 648.

Where the question involved in a mandamus proceeding is of a public concern, as is the one herein, and the object of the action is to enforce the performance

of a public duty or right in which the people in general are interested, the applicant for the writ is not required to show any legal or special interest in the result sought to be obtained. It is only necessary that he be a citizen, and, as such, interested in common with other citizens in the execution of the law. High on Extraordinary Remedies, section 431; *Board, etc.*, v. *State*, 86 Ind. 8, and cases there cited. It follows, therefore, that the relators are shown to have the requisite degree of interest to enable them to maintain this action. It is to be regretted that appellant, as a public official, intrusted, under the law, with a public duty, should disregard its plain provisions and commands. Such neglect or refusal to perform a duty which he had sworn to discharge, merits severe condemnation. When public officers, charged with the execution of the law, refuse to obey its mandates, or willfully ignore them, the evil results which must necessarily follow from such acts, tend to undermine the very foundation of civil government. When such officers fail or refuse to discharge their plain duties under the law, not only do they violate their official oaths, but also subject themselves to the penalty imposed by section 2105, Burns' R. S. 1894 (2018, R. S. 1881).

It follows, from the conclusions reached, that the lower court was fully justified in overruling the demurrers, and in awarding the peremptory writ of mandate as it did. So far as the holding in *State* v. *Harrison, supra*, may be in conflict with this opinion, it must be deemed and held to be overruled.

Judgment affirmed.