[S. F. No. 4999.   In Bank.—August 27, 1908.]

INDEPENDENCE LEAGUE (a Political Party), Petitioner, v. EDWARD R. TAYLOR, Mayor of the City and County of San Francisco, and CAMERON H. KING, and C. L. APPERSON, Respondents.

BOARD OF ELECTION COMMISSIONERS OF SAN FRANCISCO—APPOINTMENT TO FILL VACANCY—RIGHT OF POLITICAL PARTY TO REPRESENTATION —MANDAMUS.—Under section 1 of chapter I of article XI of the charter of the city and county of San Francisco it is the imperative duty of the mayor to fill vacancies in the board of election commissioners by the appointment of such individuals as will make an equal representation thereon of the two political parties casting the highest vote at the general election last preceding the appointment; and while he has a discretion in the selection of the individual to be appointed, he has no discretion to seek those individuals outside of the designated class of eligibles. The performance by the mayor of such duty may be enforced by writ of mandate, notwithstanding he has attempted to fill such vacancies by the appointment of persons who were ineligible.

ID.—POLITICAL PARTY MAY MAINTAIN MANDAMUS—PARTIES DEFENDANT. —The political party which is entitled to representation on the board of election commissioners in the event of a vacancy therein, may maintain the proceeding in *mandamus* in its party name to enforce its right. In such proceeding, the ineligible persons who

had been appointed to fill the vacancies are not proper parties defendant.

APPLICATION for a Writ of Mandate directed to the Mayor of the City and County of San Francisco, and others.

The facts are stated in the opinion of the court.

Daniel O'Connell, and Hugh McIsaac, for Petitioner.

King & Kirk, for Respondents.

BEATTY, C. J.—Application for mandate in supreme court to Edward R. Taylor, as mayor of the city and county of San Francisco, et al.

The object of this proceeding by *mandamus* is to compel the mayor of the city and county of San Francisco to appoint as members of the board of election commissioners of said city and county two persons selected from said Independence League. The other persons, King and Apperson, who are named as respondents, are members of other political parties who were appointed to fill vacancies in the board of election commissioners at a time when, by reason of their party affiliations, they were ineligible as contended by petitioners, and when members of the Independence League were alone eligible. They are now in the possession of the offices to which they were so appointed, and are at least *de facto*, if not *de jure*, members of the commission. They seem to have been named as parties defendant upon the view that the court could, in this proceeding, turn them out and put others in their places, but we are satisfied that we cannot now grant that measure of relief on any view as to the statutory duty of the mayor with regard to the selection of his appointees. If it shall be concluded that it was the imperative duty of the mayor to appoint members of the Independence League, and none others, to the vacancies in the commission, and that the performance of that duty can and ought now to be enforced by a peremptory writ of mandate, the only effect will be that any new appointees of the mayor will be invested with a claim of title to the offices in question which will enable them to contest the right of King and Apperson to continue in possession. This, of course, gives them a contingent and indirect interest in the result of this

proceeding, but it does not entitle them to be treated as parties properly before the court. Upon this view of the case, we are relieved of any further consideration of the point to which most of the argument of counsel was addressed,—viz., the point urged in behalf of King and Apperson that *mandamus* is not the proper remedy for the trial of the title to an office. Conceding that proposition, as we do, the simple result is that they are no longer in the case, and the only question we have to decide is whether the mayor can now be commanded to confer a title upon two persons selected by him from the ranks of the Independence League.

On the part of the mayor the case has been submitted on a demurrer which raises only two questions—1. The legal capacity of the league to maintain the action, and 2. The sufficiency of the facts alleged to warrant the court in granting the relief sought. Among the facts alleged, and by the demurrer admitted, are the following: The Independence League is a political party which was duly organized under the laws of California prior to the general election in 1906. Its candidates for state and for city and county offices were placed upon the official ballot used at that election, and they received respectively more than three per cent of the votes cast in the state and city and county at said election,—viz., 45,008 votes in the state, and 10,523 votes in the city and county of San Francisco. The vote in the city and county for their candidate for governor (10,523) was higher than the vote of any other party candidate for that office except that cast for the Republican candidate. The Democratic candidate received not more than 7,000 votes, the Union Labor candidate not more than 6,000 votes, the Socialist candidate not more than 2,103 votes, and the Prohibition candidate not more than 156 votes. On January 6, 1908, the terms of office of two members of the board of election commissioners expired, creating two vacancies, which it was the duty of the mayor to fill by appointment in accordance with the provisions of the charter. No member of the board was then or had ever been a member of the Independence League, as the mayor well knew, but with this knowledge he appointed to fill said vacancies Cameron H. King, a member of the Socialist party, and C. L. Apperson, a member of the Democratic party. Upon being informed of this fact the Independence League, by its county committee, on March

8, 1908, made a written demand upon the mayor to appoint members of that party, with which demand he refused to comply. There were among the many thousand members of the league a large number of persons fit and proper and duly qualified to be appointed as members of the commission, as the mayor at all times well knew. With reference to the right of Daniel O'Connell and John S. Kelly to maintain the action in the name of the league, it is admitted that they are respectively the chairman and secretary of the county committee of the party, and at a regular meeting of the committee on March 19, 1908, were duly authorized and directed to commence this proceeding. In connection with these facts the petitioners plead section 1 of chapter I of article XI of the charter of San Francisco, which reads as follows: "The conduct, management and control of the registration of voters, and of the holding of elections, and of all matters pertaining to elections in the city and county, shall be vested exclusively in and exercised by a board of election commissioners consisting of five members who shall be appointed by the mayor, and shall hold office for four years. Each of the commissioners shall receive an annual salary of one thousand dollars. Each member of the board must be an elector of the city and county at the time of his appointment and must have been such for five years next preceding such time. Those first appointed must, immediately after their appointment, so classify themselves by lot that one shall go out of office at the end of one year, one at the end of two years, one at the end of three years, and two at the end of four years. The mayor shall not make any appointment upon the board at any time before thirty days prior to the time when such appointee is to take office. Two of the five members first appointed shall be chosen from each of the two political parties casting in the city and county the highest vote for governor or electors of president and vice-president, as the case may be, at the last preceding general election. The fifth member shall be chosen from the political party casting the third highest such vote at such election, if there be such third party, and if not, then at the discretion of the mayor. Upon the expiration of the term of office of any commissioner, the appointee must be chosen from the same political party as the retiring commissioner, consistently with the foregoing provisions as to equal representation at all times

of the two political parties ,casting the highest vote at the general election last preceding the appointment in question as prescribed in this section."

Upon the conceded facts, as above stated, it does not seem to us to admit of any doubt that it was the imperative duty of the mayor under this provision of the charter to fill the vacancies which occurred in the election commission in January last by appointing members of the Independence League. The terms of the section are so plain and the policy of the provision so obvious that discussion as to the meaning of the first or the vital importance of the latter would be superfluous. The functions of the board with regard to the whole series of acts from the registration of voters till the canvass of their votes are so numerous and important and the necessity of making such a body, armed with such powers, representative of the two leading parties in a Republican or Democratic government is so universally recognized that no argument is needed to fortify the conclusion that the framers of the charter, and the people who adopted it, intended to deprive the mayor of any discretion to disregard its plain mandate. The policy of the law is to prevent frauds in elections, and not only to secure fairness in their conduct, but to give to the public a practical assurance that they have been fairly conducted and their results honestly declared. The mayor has, and necessarily must have, a discretion in the selection of the individuals to be appointed, but he has no discretion to seek those individuals outside of the designated class of eligibles. To admit that he has such a discretion, and that such discretion is uncontrolled, is to bring about the very condition which the framers of the charter designed to prevent. Upon the facts presented by the petition and demurrer our conclusion is that the mayor violated the charter in appointing King and Apperson, and that he has neglected and refused to perform an act specially enjoined as a duty resulting from his office in refusing to appoint two members of the Independence League to the places left vacant in January last.

It seems to be argued that because those places are now occupied by King and Apperson, the court cannot order the respondent to appoint others to the same positions. This argument also reduces the charter provision in question to a mere academic declaration of political ethics and deprives the lead-

ing political parties of any effective remedy for the violation of the important rights it was intended to secure. If its validity were admitted, the mayor might select the members of the commission from a piece club with perfect impunity so far as the courts are concerned.

And this brings us to the other question raised by the demurrer—the question as to the legal capacity of a political party to maintain an action in the party name for the enforcement of rights conferred upon the party in its corporate capacity. It is urged that there is not a single instance to be found in the reported cases in which a political party has been a party plaintiff or petitioner in a legal proceeding. This argument is of little weight in view of the fact that only within a very few years have political parties been converted into legal entities. That they are such legal entities when organized under the general laws of this state recently enacted there can be no doubt. They are in all essential respects strictly identical with other corporate bodies not organized for profit, and it would be a startling anomaly to hold that they have no capacity to enforce by ordinary legal process the rights which have been conferred upon them by valid laws.

The demurrer of the mayor is overruled. His answer already on file presents issues of fact as to which we have understood that the parties could and would agree. They have not as yet presented any agreed statement, and if they cannot reach an agreement it may become necessary for the court to hear the evidence.

As to King and Apperson, named as respondents, the proceeding is dismissed.

Henshaw, J., Lorigan, J., and Shaw, J., concurred.

SLOSS, J., and ANGELLOTTI, J., concurring.—Except as to the remedy we are entirely in agreement with the views of the court as above expressed. That is to say, we are satisfied, 1. That the intent of the charter provision relied upon was to require such appointments to the election board as would secure, as far as possible, an equal representation to the two political parties who had cast the highest vote for governor or electors at the election next preceding such appointments, and that, upon the facts stated in the petition, it was the duty

of the mayor to fill the vacancies in the election commission from members of the Independence League; and 2. That political parties, as such, are legal bodies beneficially interested in securing such appointments, and entitled to maintain legal proceedings in that behalf.

We are not satisfied, however, that where the mayor has made his appointments, and the offices are thereby in fact filled, he can be compelled by *mandamus* proceedings to make other appointments, until it has first been determined, in some proceeding where it can be effectually determined as to all parties interested, that the appointments already made are illegal. The opinion concedes that no such determination can be made in this proceeding, and for that reason the dismissal of the proceeding as to King and Apperson, the appointees, has been ordered. The question of the eligibility of one elected or appointed to public office to hold such office is ordinarily determined in a contest proceeding provided by statute or in the proceeding of *quo warranto,* in either of which the party whose right is assailed is a necessary party, and the effect of the judgment therein is to oust him from the office or to establish his right thereto. We have found no decision holding that such question can be determined in any other way, and it may be claimed with much force that until the question is legally determined in some such proceeding, the appointments cannot elsewhere be held to be absolutely void, and the appointing power compelled to proceed as though no appointments had in fact been made.

However, as a majority of the court has decided in favor of the appropriateness of the remedy of *mandamus* in this case, a definite expression of opinion on this to us doubtful point is unnecessary.