[Civ. No. 2773.    Third Appellate District.—February 21, 1924.]

R. PLATNAUER, Respondent, v. THE BOARD OF SU-
PERVISORS OF SACRAMENTO COUNTY et al., Ap-
pellants.

[1] JUSTICES OF THE PEACE — TOWNSHIP AND CITY — SEPARATE EN-
TITIES.—Under section 103 of the Code of Civil Procedure, as
amended by the legislature, the offices of township justice of the
peace and city justice of the peace are distinct entities, though
having certain jurisdiction in common; and the fact that a town-
ship and a city embrace the same territory is a mere incident.

[2] ID.—CONSTITUTIONAL LAW—DUTY OF SUPERVISORS—MANDAMUS—
PARTIES.—The constitution in no manner restricts the power of
the legislature to provide for city justice's courts in cities oper-
ating under freeholders' charters which make no provision for
municipal courts; and since the legislature has made such provision
and has expressly directed boards of supervisors to fill existing
vacancies, it is the duty of a board of supervisors to appoint some
competent person to the office thus created, and a writ of man-
date may issue, at the instance of an elector and taxpayer, to
compel it to do so.

[3] ID.—NECESSITY FOR CITY JUSTICE — DETERMINATION OF LEGISLA-
TURE.—Whether there is a necessity for a city justice's court in
addition to that of the township is a question which must be ad-
dressed to the legislature and over which the courts have no
jurisdiction.

APPEAL from a judgment of the Superior Court of
Sacramento County.   Peter J. Shields, Judge.   Affirmed.

The facts are stated in the opinion of the court.

J. J. Henderson, District Attorney, and W. V. Cowan,
Assistant District Attorney, for Appellants.

R. Platnauer, *in pro. per.,* for Respondent.

FINCH, P. J.—Plaintiff was granted a peremptory writ
of mandate directing the defendants to appoint a justice of
the peace for the city of Sacramento.   The defendants have
appealed.

Plaintiff alleged that he is a taxpayer and a qualified
elector of the city of Sacramento; that for more than twenty

years he has been admitted to practice law in the state of California; that he presented and filed a petition, signed by taxpayers and electors of the city of Sacramento, requesting defendants to appoint him justice of the peace of said city, and that plaintiff demanded of defendants that they appoint some competent person justice of the peace of said city, but that they refused and still refuse to appoint any person to such office. From the pleadings and the stipulations of the parties it appears that one of the judicial townships into which the county of Sacramento is divided is designated Sacramento township and is identical in boundaries with the city of Sacramento; that a justice of the peace for said judicial township was elected at the last general election and is now acting as such; that for a number of years there has been no incumbent of the office of city justice of the peace of the city of Sacramento, and that said city is a city of the second and one-half class.

Section 4015 of the Political Code provides: "The board of supervisors of each county, as public convenience may require, shall divide their respective counties into townships for the purpose of electing justices of the peace and constables; provided, however, that in the establishment of townships that may hereafter be established no incorporated city shall be divided so as to lie partly within one township and partly within another." The county of Sacramento is a county of the seventh class and the city of Sacramento has a population of more than twenty thousand. Section 4236-1 of the Political Code, as added by Stats. 1921, p. 794, provides: "For the purpose of regulating the compensation of township justices and constables in counties of the seventh class, townships shall be classified on the basis of population. . . . Incorporated cities having a population of twenty thousand or more, shall be known as townships of the first class. . . . Townships of the first class shall have one justice," whose salary is fixed at "three thousand six hundred dollars per annum." Section 103 of the Code of Civil Procedure, as amended by the legislature of 1923 (Stats. 1923, p. 1011), provides: "There shall be at least one justice's court in each of the townships of the state, for which one justice of the peace must be elected. . . . In every city of the first and one-half class there must be seven justices of the peace, and in every city of the second class

there must be two justices of the peace, and in every city of the second and one-fourth, second and one-half, second and three-fourths, third and fourth classes there must be one justice of the peace, to be elected in like manner, by the electors of such cities or towns, respectively; and such justices of the peace of cities shall have the same jurisdiction, civil and criminal, as justices of the peace of townships and township justice's courts. Said justices of the peace of cities and justice's courts of cities shall also have jurisdiction of all proceedings for the violation of any ordinance of any city in which courts are established both civil and criminal, and of all actions for the collection of any license required by any ordinance of any such city, and generally exercise all powers, duties and jurisdiction, civil and criminal, of police judges, judges of police courts, recorder's courts or mayor's courts, within such city. No person is eligible to the office of justice of the peace in any city of the first, first and one-half, second, second and one-fourth, second and one-half, second and three-fourths or third class, who has not been admitted to practice law in this state. . . . Every city justice of the peace in any city of the second and one-half class shall receive a salary of four thousand dollars per annum. . . . Where the number of city justices herein fixed for any city exceeds the number elected at the last general election, the board of supervisors of the county in which such city is situated shall, as soon as is practicable after this amendment takes effect, make appointments in the manner provided by law, to fill such vacancies.''

[1] From the foregoing it clearly appears that the offices of township justice of the peace and city justice of the peace are distinct entities, though having certain jurisdiction in common. The fact that Sacramento township and the city of Sacramento embrace the same territory is a mere incident. In other counties a city of the same class may constitute a part only of a judicial township. City justice's courts are given broader jurisdiction than those of townships. No one is eligible to the office of city justice of the peace, except in the fourth class, who has not been admitted to practice law. No such qualification is required of a township justice. The salary of the justice of the peace of Sacramento township is not the same as that of a justice of the peace in a city of the second and one-half class.

The freeholders' charter of the city of Sacramento (Stats. 1921, pp. 1919, 1963) provides for a police court with jurisdiction of all misdemeanors, of proceedings for violations of the charter or of any ordinance of the city, and of the examination and commitment of persons charged with offenses triable in the superior court. It is competent, in freeholders' charters, to provide, in addition to police courts, for the establishment of "municipal courts and judges thereof, with such civil, criminal and magisterial jurisdiction as by law may be conferred upon inferior courts and judges thereof . . . When such municipal court has been established, there shall be no other court inferior to the superior court." (Const., art. XI, sec. 8½, subd. 1.) The Sacramento charter makes no provision for a municipal court. [2] The constitution in no manner restricts the power of the legislature to provide for city justice's courts in cities operating under freeholders' charters which make no provision for municipal courts. (*Graham* v. *Mayor etc. of Fresno,* 151 Cal. 465 [91 Pac. 147].) Since the legislature has made such provision and has expressly directed boards of supervisors to fill existing vacancies, it is the plain duty of appellants to appoint some competent person to the office. The writ of *mandamus* "may be issued . . . to compel the performance of an act which the law specially enjoins, as a duty resulting from an office." (Code Civ. Proc., sec. 1085.) The writ may issue to compel an officer to fill a vacancy. (*City of San Diego* v. *Capps,* 32 Cal. App. 461 [163 Pac. 235]; *Commonwealth* v. *Livingston,* 171 Ky. 52 [186 S. W. 916]; *Wampler* v. *State,* 148 Ind. 557 [38 L. R. A. 829, 47 N. E. 1068].) An elector and taxpayer is a proper party plaintiff in such a proceeding. (High's Extraordinary Legal Remedies, 3d ed., sec. 431; *Conn* v. *City Council,* 17 Cal. App. 705 [121 Pac. 714, 719]; *Frederick* v. *City of San Luis Obispo,* 118 Cal. 391 [50 Pac. 661]; *Commonwealth* v. *Livingston, supra.*) [3] Whether there is any necessity for a city justice's court in addition to that of the township is a question which must be addressed to the legislature and over which the courts have no jurisdiction.

The judgment is affirmed.

Plummer, J., and Hart, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 21, 1924.

All the Justices concurred.