[S. F. No. 17709. In Bank. Aug. 4, 1948.]

EDITH B. HOLLMAN, Petitioner, v. EARL WARREN, as Governor, etc., Respondent.

Macklin Fleming and H. Ward Dawson, Jr., for Petitioner.

Fred N. Howser, Attorney General, and E. G. Benard, Deputy Attorney General, for Respondent.

John J. Dailey, as Amicus Curiae, on behalf of Respondent.

CARTER, J.—In this original proceeding a writ of mandate is sought to compel respondent Earl Warren, Governor of California, to exercise his discretion with reference to the appointment of notaries public in the city and county of San Francisco.

The uncontroverted petition for the writ shows that petitioner is a citizen of the United States and a resident and taxpayer of said city and county. Petitioner filed an application with respondent "for appointment as Notary Public in and for the City and County of San Francisco, showing her eligibility for appointment, her good moral character and integrity, and previous service as a Notary Public in the County of Monterey from 1932 until her resignation in 1947." Although respondent is under a duty to commission notaries public in the several counties of the state in such numbers as he deems necessary for the public convenience "he has refused to consider the merits of the application, or petitioner's fitness for the position of Notary Public in and for the City and County of San Francisco, or to consider whether the public convenience necessitated the appointment of an additional Notary Public in the City and County of San Francisco, alleging as the sole ground for his refusal that he was limited by law to the issuance of 222 Notaryships for the City and County of San Francisco." Appointments are made without regard to number in counties other than San Francisco and it is the governor's "custom and practice . . . to appoint all qualified applicants to the position of Notary Public in every County of the State of California except qualified applicants who reside in and seek appointment as a Notary Public in and for the City and County of San Francisco." Petitioner prays that respondent be required "to determine whether the public convenience necessitates the appointment of another Notary Public in the City and County of San Francisco and, if he finds it does so necessitates, to consider petitioner's fitness

and qualifications for appointment to the position of Notary Public in the City and County of San Francisco.''

The controversy concerns the validity of the exception (that portion in italics) in section 8200 of the Government Code, reading: ''The Governor may appoint and commission no-taries public for the several counties of the State in such number as he deems necessary for the public convenience, *except that in the counties of the second class the number shall not exceed 222.*'' But before considering the merits, attention must be given to the claim that mandamus is not the proper remedy in the instant case; that there is no express duty imposed upon the governor to appoint notaries public or any particular person to the office of notary public; and that it is a matter entirely within his discretion.

Generally speaking, it is settled in this state that in an appropriate case a writ of mandate will issue against the governor of the state. (*Elliott* v. *Pardee,* 149 Cal. 516 [86 P. 1087] ; *Stuart* v. *Haight,* 39 Cal. 87; *Harpending* v. *Haight,* 39 Cal. 189 [2 Am.Rep. 432] ; *Middleton* v. *Low,* 30 Cal. 596; *McCauley* v. *Brooks,* 16 Cal. 11, overruled on other grounds in *Stratton* v. *Green,* 45 Cal. 149; *O'Brien* v. *Olson,* 42 Cal. App.2d 449 [109 P.2d 8].) It has been repeatedly held that where the duty is imposed upon an officer or board to make an appointment to office or fill a position, mandamus will lie to compel the making of the appointment. (*Elliott* v. *Pardee, supra; La Mar* v. *City Council of So. S. F.,* 53 Cal.App.2d 387 [127 P.2d 1022] ; *Platnauer* v. *Board of Supervisors,* 65 Cal.App. 666 [225 P. 12] ; *City of San Diego* v. *Capps,* 32 Cal.App. 461 [163 P. 235] ; see, *Independence League* v. *Taylor,* 154 Cal. 179 [97 P. 303] ; 105 A.L.R. 1124; 38 C.J. 700; 35 Am.Jur., Mandamus, §§ 137, 226.) For illustration it is said in *Elliott* v. *Pardee, supra,* p. 520, where the statute ''authorized and empowered'' the governor upon petition of the electors, to appoint election commissioners to conduct an election where a city had failed to elect officers: ''The governor must be satisfied of the truth of the matters set forth in the petition, and this means that he has the right to decide that question for himself. But if he is not satisfied by the verified petition he should give the petitioners a reasonable opportunity to supply the additional evidence which the case demands, and then make his decision. If the essential facts are not proved to his satisfaction, he may and ought to refuse to appoint the commissioners, but if they are proved, it is his duty to appoint. Power and authority conferred upon

a public officer to perform an act not discretionary, in which the public or third parties have an interest, make the exercise of the power obligatory whenever a proper case for its exercise is presented, and mandamus will issue even to the chief executive of the state to compel the exercise of a ministerial function defined by statute.''

The statute here involved (Gov. Code, § 8200, *supra*) authorizes the governor to appoint notaries public for the counties of the state in such numbers as he ''deems necessary for the public convenience.'' In view of the many duties and services rendered by notaries the Legislature clearly contemplated that they should be appointed in accordance with the need therefor. It is true, that discretion is vested in the governor as to the number to appoint and the discretion rests with him as to whom he shall select. If the statutory provision limiting the number of notaries that may be appointed for the city and county of San Francisco is invalid, he still may not find that public convenience requires any more notaries for that city and county. While ordinarily, mandamus may not be available to compel the exercise by a court or officer of the discretion possessed by them in a particular manner, or to reach a particular result, it does lie to command the exercise of discretion—to compel some action upon the subject involved. (*Lissner* v. *Superior Court*, 23 Cal.2d 711 [146 P.2d 232]; *Lindell Co.* v. *Board of Permit Appeals*, 23 Cal.2d 303 [144 P.2d 4]; *Lincoln* v. *Superior Court*, 22 Cal.2d 304 [139 P.2d 13]; *Miller* v. *Municipal Court*, 22 Cal.2d 818 [142 P.2d 297]; *Katenkamp* v. *Superior Court*, 16 Cal.2d 696 [108 P.2d 1]; *Bank of Italy* v. *Johnson*, 200 Cal. 1 [251 P. 784]; *Cohen* v. *Melrose*, 167 Cal. 792 [141 P. 374]; *Golden Gate Tile Co.* v. *Superior Court*, 159 Cal. 474 [114 P. 978]; *Walker* v. *Superior Court*, 139 Cal. 108 [72 P. 829]; *Jacobs* v. *Board of Supervisors*, 100 Cal. 121 [34 P. 630]; *Francisco* v. *Manhattan I. Co.*, 36 Cal. 283; *Allen* v. *Bowron*, 64 Cal. App.2d 311 [148 P.2d 673]; *County of Los Angeles* v. *Superior Court*, 128 Cal.App. 522 [18 P.2d 112]; *First National Bank* v. *Superior Court*, 71 Cal.App. 64 [234 P. 420]; *Browning* v. *Dow*, 60 Cal.App. 680 [213 P. 707]; *Gammon* v. *Mc-Kevitt*, 50 Cal.App. 656 [195 P. 726].) The application of that rule to the use of mandamus in compelling the making of appointments to office is illustrated in *Davisson* v. *Board of Supervisors*, 70 Cal. 612 [11 P. 680], and *Harrington* v. *Pardee*, 1 Cal.App. 278 [82 P. 83], where it is pointed out that the one possessing the appointing power cannot be required

to appoint a particular person to the office. The choice of the person rests in the discretion of the appointing power. In the instant case, as plainly appears from the petition, the governor has refused to exercise his discretion feeling that he cannot appoint more notaries for San Francisco because of the limitation in section 8200 of the Government Code, *supra*.

The availability of mandamus to compel the exercise of the appointing power by the governor in making appointments involving purely the executive and political power of the governor as distinguished from those in a different category has been discussed in several cases. (See cases collected 105 A.L.R. 1124; 35 Am.Jur., Mandamus, §§ 136, 137.) Whatever may be the merits of such a distinction it is manifest that notaries public do not exercise any executive power. They are not agents selected by the governor to carry out his political views—to form the policies of his administration.

Section 8200 of the Government Code provides that the governor "may" appoint notaries in such number as he deems necessary. Ordinarily, "may" is permissive (Gov. Code, § 14), but if the provision or context otherwise requires it that meaning is not required (Gov. Code, § 5). It is clear that a mandatory duty to appoint notaries public is imposed. That is evident from the multitude of duties they perform, such as the administration of oaths, taking depositions, acknowledgments and other functions. It is not to be supposed that the Legislature intended to leave it to the whim or caprice of the governor as to whether there should be any notaries appointed. The place in the social order of their functions and the necessity that the public have their services are not to be lightly considered. The position of notaries public reaches back to antiquity and is found in practically all nations. (See Proffatt on Notaries, §§ 1-9; 39 Am.Jur., Notary Public, §§ 2, 3.)

It is urged that the real parties in interest are not named, that is, the 222 notaries now commissioned for the city and county of San Francisco, citing rule 56 of Rules on Appeal. Those notaries are not so interested that they are necessary parties. The issuance of a writ will not result in ousting any of them from office or replacing any of them. (See *Independence League* v. *Taylor, supra.*) Indeed as before seen, the governor may decide not to appoint additional notaries for said city and county.

Nor is there any merit to the contention that petitioner is not a properly interested party. Aside from her

character as an applicant for appointment as a notary it is alleged that she is a resident and taxpayer of the city and county of San Francisco. As such she is interested in having a sufficient number of notaries commissioned to act therein.

The rule applicable here is stated thus in 35 American Jurisprudence section 320, page 73: ''[B]y the preponderance of authority . . . where the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the relator need not show that he has any legal or special interest in the result, since it is sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced. . . . Generally, when a power or duty is imposed by law upon a public board or officer, and in order to execute such power or perform such duty, it becomes necessary to obtain a writ of mandamus, it or he may apply for the same.'' (See *Board of Soc. Welfare* v. *County of Los Angeles,* 27 Cal.2d 98, 100, 101 [162 P.2d 627]; also, *Platnauer* v. *Board of Supervisors, supra.*)

The case is a proper one for this court to exercise its original jurisdiction. It affects the entire city and county of San Francisco, a populous county, the writ runs to the highest executive of the state, and an important constitutional question is involved.

Turning to the question of the validity of the provision in section 8200 of the Government Code, which limits the number of notaries for the city and county of San Francisco, but for no other county, petitioner invokes provisions of the Constitution. ''All laws of a general nature shall have a uniform operation.'' (Cal. Const., art. I, § 11.) ''No special privileges or immunities shall ever be granted which may not be altered, revoked, or repealed by the Legislature; nor shall any citizen, or class of citizens, be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens.'' (Cal. Const., art. I, § 21.) ''The Legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: . . . *Nineteenth*—Granting to any corporation, association, or individual any special or exclusive right, privilege, or immunity. . . . *Thirty-third*—In all other cases where a general law can be made applicable.'' (Cal. Const., art. IV, § 25.) The essence of the contention is that the provision creating the limitation is a special and local law and that there is no rational basis for setting San Francisco County apart from other counties.

The number of notaries public that each county in the state should have and the method of fixing that number has been the subject of considerable legislation with varying patterns since 1850. The first act adopted by the Legislature authorized the governor to appoint notaries in each county "in proportion to the population and business thereof" (Stats. 1850, p. 114, § 1), thus establishing a uniform basis for the number for each county. But that lasted only until 1853 when the Legislature commenced to make its wishes felt in regard to the number. That year it stated that the governor should appoint a specified number for named counties (San Francisco 20, 15 for each of 10 named counties, and 5 for each of all others). (Stats. 1853, p. 125, § 1.) That practice was thereafter followed for a considerable period of time, the matter being the subject of legislative action nearly every session. The number for San Francisco was gradually increased. (See, Stats. 1857, p. 358, § 1; Stats. 1859, p. 108, § 1; Stats. 1861, p. 577, § 1; Stats. 1861, p. 497, § 1; Stats. 1862, p. 443, § 1; Stats. 1869-70, p. 802, § 1.) For a period following 1865, the Notary Public Act was not directly amended but a certain number of notaries were added for named counties. (See, Index to the Laws of California, John W. Davis, pp. 536-537.) The notary public law was codified in the original Political Code in 1872 (Pol. Code, §§ 791 et seq.). In 1887, the practice of stating a fixed number of notaries for a specified county was discontinued and it was provided that specified counties should have *not exceeding a stated number*. (Stats. 1887 [Ext. Sess.], p. 79; Pol. Code, § 791, as it then read.) That method (of not exceeding a certain number) was pursued for a time (Gov. Code, § 8200) but in 1889, a significant departure occurred, in that instead of naming most of the counties in the state and the number not exceeding which each should have, as had theretofore been done, it was provided that the governor should appoint such as he shall deem necessary for the public convenience except in the counties of San Francisco, Los Angeles, and Solano where not exceeding a stated number was provided for. (Stats. 1889, p. 377, § 1.) In 1893 (Stats. 1893, p. 289; Pol. Code, § 791 as then amended) Los Angeles and Solano Counties were dropped from the statute, leaving San Francisco the sole exception in which the governor did not have discretion to fix the maximum number for such county, and at that time the reference was not to San Francisco but to counties of the *first* class (those having a population of over 200,000 [Stats.

1893, p. 346, § 162]). The only county of that class at that
time was San Francisco. The statute remained substantially
the same until 1911 when the only change was to make the ex-
ception apply to counties of the *second* class. (Stats. 1911, p.
941; Pol. Code, § 991 as then amended.) At that time San
Francisco was the *sole* county in that class, the first class
counties at that time embracing those with 500,000 or more
population and the *statutes fixed the population of each and
every county in the state* with the result that each county
automatically fell into a single classification. (Stats. 1911, p.
96, amending Pol. Code, §§ 4005c and 4006.) The statutes re-
mained substantially the same up to the present time except
that from time to time the maximum number of notaries for
the city and county of San Francisco was increased until at
the present time it stands at 222. (Gov. Code, § 8200.) At
this date counties are classified according to population but
the statute fixes the population, and as so fixed, each county
is in a class by itself (Gov. Code, §§ 28020-28079, as added
Stats. 1947, ch. 424), and San Francisco is still a county of
the second class. (Gov. Code, §§ 28020(2), 28023.)

The foregoing history of the legislation demonstrates that
the limitation here involved is arbitrary and without any rea-
sonable basis. The legislation on its face expressly chooses
without reason to limit the number of notaries for one county,
and one county only, thus leaving no room for the presump-
tion of constitutionality or for the presumption that the Leg-
islature had a conceivably rational basis for the limitation on
the number of notaries for San Francisco, or the presumption
of constitutionality from the long existence of the statute
without attack. No attempt is made to classify the counties
for the purpose of ascertaining the number of notaries accord-
ing to the requirements of those counties or the effect of the
population thereof on the needs. A county with a population
and business less than that of San Francisco could have more
notaries than San Francisco, or one with a population and
business greater than San Francisco could have less than San
Francisco. There is no reason why the number of notaries
for all the counties except San Francisco should be subject
to the public needs as determined by the governor, while
San Francisco's needs are determined by the Legislature as to
the maximum but not the minimum. The area of the city and
county of San Francisco as compared with other counties
furnishes no satisfactory basis for the Legislature to limit the

number of notaries, while the governor decides on the basis of need for all other counties, giving consideration to both the business requirements as well as the distribution of that business in the county. Moreover the exception contained in the statute purports to be based upon population, not area.

The most recent expression by this court in regard to special and local laws, and what constitutes a proper basis for the classification of counties, is contained in *Consolidated Printing & Publishing Co.* v. *Allen,* 18 Cal.2d 63 [112 P.2d 884]. There the statute provided a method for the publication of delinquent tax lists for counties of the first class (Los Angeles is the only county of that class) different from that for all other counties. In holding the statute invalid this court said: "We find no natural, intrinsic, or constitutional ground of distinction between the county of Los Angeles and other counties which would justify the application of a special procedure with reference to the sale of delinquent property." (P. 71.) While there is discussion in that case concerning the existence of a general statute for all counties prior to the special statute for Los Angeles County, we believe it is controlling in the instant case on the lack of rational foundation for the classification and makes unnecessary the discussion of other cases.

For the foregoing reasons we hold that the provision for the limitation on the number of notaries for the city and county of San Francisco contained in the italicized portion of the above-quoted section (Gov. Code, § 8200) is invalid.

It is therefore ordered that a peremptory writ of mandate issue as prayed for by petitioner.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and Spence, J., concurred.

EDMONDS, J.—In my opinion, the petition for a writ of mandate does not state a cause of action. The petitioner pleads that she filed an application with the governor for appointment as notary public in and for the county of San Francisco; that the governor refused to "consider the merits of the application, or petitioner's fitness for the position of notary public . . . or to consider whether the public convenience necessitated the appointment of an additional notary public in the City and County of San Francisco, alleging as the sole ground for his refusal that he was limited by law to the issuance of 222 Notaryships for the City and County of

San Francisco." It is then alleged that the limitation upon the number of such offices in the city and county of San Francisco is prescribed by an act of the Legislature (Gov. Code, § 8200). This limitation, the petitioner asserts, is unconstitutional, and she bases her demand for relief upon that construction of the statute. However, the allegation that the limitation is unconstitutional is a conclusion of law. (*Callahan* v. *Broderick*, 124 Cal. 80 [56 P. 782] ; 21 Cal.Jur. 31.) "A conclusion of law tenders no issue, and a complaint which depends upon such allegations is insufficient and demurrable." (*Burlingame* v. *Traeger*, 101 Cal.App. 365, 368 [281 P. 1051] ; and see cases cited 21 Cal.Jur. 26.)

"Mandamus is an extraordinary remedy, which can only be invoked to enforce a clear legal right of the plaintiff. If the right is doubtful, it must be first established in some other form of action. Mandamus will not lie to establish as well as enforce a claim of uncertain merit." (*S. F. Bowser & Co.* v. *State ex rel.*, 192 Ind. 462 [137 N.E. 57, 59] ; *State ex rel.* v. *Winterrowd,* 174 Ind. 592 [91 N.E. 956, 92 N.E. 650] ; *State ex rel.* v. *Board*, 162 Ind. 580 [68 N.E. 295, 70 N.E. 373, 984].) Here petitioner seeks the adjudication of the validity of the statute, whereas the office of mandamus is merely to execute. (Ferris, Extraordinary Legal Remedies (1926), § 194, p. 229.)

The asserted invalidity of the statute relied upon by one who refuses to perform a particular act or duty may be the basis of a suit brought to compel such performance, and in that situation mandamus is a proper remedy. For example, in *Mansur* v. *City of Sacramento,* 39 Cal.App.2d 426 [103 P. 2d 221], the petitioner had obtained a position by appointment from a civil service eligibility list. His wife was then employed by the state board of equalization. The civil service board, at the close of the first payroll period, declined to certify the payment of salary to him because of a provision of the municipal charter prohibiting the employment of one whose spouse was employed by the state or any governmental or municipal subdivision. It was held that the charter provision was invalid.

The legality of a statute may also be considered where the respondent relies upon the unconstitutionality of the enactment upon which the petitioner bases his asserted right to compel performance. The case of *Allied Architects' Assn.* v. *Payne,* 192 Cal. 431 [221 P. 209, 30 A.L.R. 1029], is one of that

kind. The application was for a writ of mandate directing the county auditor of Los Angeles County to approve the claim of the petitioner for services rendered in the preparation of certain architectural plans for a memorial hall. The county auditor refused to approve the claims upon the ground that the statute under which the debts were incurred was unconstitutional. The court decided adversely to him, upholding the validity of the legislation.

But a petitioner may not found his right upon the very statute which he alleges to be void. In *People* v. *Supervisors of San Francisco,* 20 Cal. 591, the petitioner sought to compel the board of supervisors of San Francisco to issue a license to him to conduct an intelligence office. It was also charged that the act regulating such business was unconstitutional because it did not set any standard of qualifications. The court held that the question of constitutionality could not be raised by the petitioner. "The relator cannot have a mandamus to compel the granting of a license under the law for a reason which, if valid, shows the law to be void." (*Supra,* p. 593.)

Hall was asserting his claim of right under the provisions of the statute providing that the board of supervisors could license and regulate intelligence officers. In the present proceeding, the petitioner seeks to compel the governor to consider her qualifications for an office in which there is no vacancy unless the statute under attack is unconstitutional. Hall's case rested upon inconsistent claims; here an even stronger case is made against the petitioner's position, for the procedural question depends upon the substantive determination. She is not seeking to have the governor do anything required by the law here attacked unless it is first declared invalid, and her pleading demands that he perform an act which is in plain disregard of statutory limitation. The petitioner may not use mandamus for the purpose of securing an adjudication in regard to the validity of the statute as the basis for determining her right procedurally to relief in this form because, in these circumstances, the propriety of the proceeding is made to depend upon a decision of the question of constitutionality. Otherwise stated, the procedural right to the relief demanded, if one exists, is contingent upon a decision favorable to the petitioner of the merits of the controversy.

Mandamus issues "to compel the performance of an act which the law specially enjoins" (Code Civ. Proc., § 1085).

But, to be entitled to the writ, one must assert a clear legal right to the performance of the particular duty sought to be enforced. (Ferris, Extraordinary Legal Remedies (1926), § 194, p. 228; *Irvine* v. *Gibson,* 19 Cal.2d 14 [118 P.2d 812]; *Stevens* v. *Truman,* 127 Cal. 155 [59 P. 397]; *Dobyns* v. *Cheshire,* 9 Cal.App.2d 77 [48 P.2d 743].) In the case of public officers, the duty must be one which is clearly defined, imposed or enjoined by law as a duty resulting from the office. In the absence of any clear legal right in the petitioner which it is the duty of the respondent to grant, there is no basis for the issuance of the writ for there is no showing of "an act which the law specially enjoins" and under section 1085 of the Code of Civil Procedure, this is a jurisdictional prerequisite for the exercise of the writ of mandate. (*Sherman* v. *Quinn,* 31 Cal.2d 661, 664 [192 P.2d 17]; *City of Napa* v. *Rainey,* 59 Cal. 275, 278; *Albori* v. *Smith,* 18 Cal.App.2d 615, 618 [65 P.2d 81]; *Potomac Oil Co.* v. *Dye,* 10 Cal.App. 534, 537 [102 P. 677]; see 16 Cal.Jur. 808.)

Furthermore, regardless of the question concerning the constitutionality of the statute which is challenged by the petitioner, she is not entitled to the remedy of mandamus. The writ granted by the court's decision requires the governor "to determine whether the public convenience necessitates the appointment of another notary public in the City and County of San Francisco and, if he finds it does so necessitate, to consider petitioner's fitness and qualifications for appointment to the position of notary public in the City and County of San Francisco." Even if it be conceded that the limitation upon the number of notaries public in the City and County of San Francisco is unconstitutional, the governor should not be required by mandamus to consider the qualifications of any particular person for appointment to office. Perhaps mandamus would be appropriate to compel the governor to determine whether the public convenience necessitates the appointment of additional notaries public (See Gov. Code, § 8200) but there is no basis for that proceeding in the absence of an allegation that he has refused to consider the requirements of the public in the particular locality for the services of such offices, and there is no law making it his duty to consider the application of anyone desiring an appointment.

For these reasons, I would sustain the demurrer to the petition.